# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| NOBLE COUNTY, OHIO<br>BY THE NOBLE COUNTY<br>COMMISSIONERS,<br><br>        *Plaintiff*<br><br>        v.<br><br>CARDINAL HEALTH, INC.; KROGER LIMITED PARTNERSHIP II; MIAMI-LUKEN, INC.; PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC., N/K/A JANSSEN PHARMACEUTICALS, INC; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS INC.; ALLERGAN PLC F/K/A ACTAVIS PLC; WATSON LABORATORIES, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC. F/K/A WATSON PHARMA, INC.; MYLAN BERTEK PHARMACEUTICALS INC.; ALLERGAN FINANCE LLC; RITE AID OF OHIO, INC.; WALGREEN CO.; MCKESSON CORPORATION; AMERISOURCEBERGEN DRUG CORPORATION; CVS INDIANA LLC; WAL-MART STORES EAST, LP; BRANDON WORLEY<br><br>        *Defendants.* | Civil Action No. _____<br>(Removal from: The Noble County Court of Common Pleas, Caldwell, Ohio) |

## NOTICE OF REMOVAL

In accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453, Defendant CVS Indiana, L.L.C. ("CVS"), with full reservation of defenses, gives notice of the removal of the above-captioned action from the Noble County Court of Common Pleas, in Caldwell, Ohio, to the United States District Court for the Southern District of Ohio, Eastern Division. This case is removable under CAFA because the lawsuit is essentially a class action lawsuit, litigation of this case in federal court promotes CAFA's overall purpose, and CAFA's statutory requirements are satisfied.

## I.  Nature of Removed Action

1.    On October 3, 2018, Plaintiffs Noble County Commissioners filed a complaint in the Noble County Court of Common Pleas for claims relating to prescription opioid medications.[1] Plaintiffs assert claims against four defendant groups: manufacturers, distributors, physicians, and sales representatives. Complaint at 6. Plaintiffs bring statutory claims under the Ohio Consumer Sales Practices Act, R.C. § 1345.01 *et seq.* ("CSPA") arising out of alleged misrepresentations made to residents of Noble County (Claim One), as well as common law claims for fraud (Claim Two), unjust enrichment (Claim Three), negligence (Claim Four), negligent misrepresentation (Claim Five), public nuisance (Claim Six), constructive fraud (Claim Seven), and negligence per se (Claim Eight).

---

[1] Because this case was brought by "Noble County, Ohio by the Noble County Commissioners," the Complaint refers interchangeably to "Plaintiff" and "Plaintiffs." CVS refers herein to the Commissioners as Plaintiffs.

Plaintiffs seek damages and equitable relief for alleged injuries to the residents of Noble County, and to the County itself.

2.    This action is one of more than 1,600 opioid lawsuits filed by government entities against manufacturers, distributors, and retailers of prescription opioid medications. Plaintiffs allege that Defendants are liable for the economic and non-economic injuries suffered by resident doctors, health care payors, and opioid-addicted individuals, as well as for the costs incurred in addressing the opioid epidemic.

3.    On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation ("MDL") in the Northern District of Ohio ("Opiate MDL") for cases just like this one—cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 1 (Dec. 12, 2017 Transfer Order) (attached as **Exhibit 1**). To date, more than 1,600 actions have been transferred to the Opiate MDL.

4.    Plaintiffs' 136-page Complaint resembles nearly all of the complaints filed in the Opiate MDL. The bulk of the allegations in these complaints have been levied by counties against the manufacturers for alleged deceptive marketing of prescription opioids from approximately the 1990s to present. *See* Complaint ¶¶ 1-

108. In fact, the allegations against the manufacturers and distributors are nearly identical to those asserted in *The County of Summit, Ohio, et. al.* v. *Purdue Pharma L.P., et al.*, MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case that is currently being litigated in the Opiate MDL.

5.    The thrust of Plaintiffs' Complaint is that the so-called Manufacturer Defendants made misleading statements and engaged in "deceptive marketing" of opioids to "prescribers within Ohio and Noble County" in an effort to "distort and pervert medical and public perception of existing scientific data [on opioids]." Complaint ¶¶ 113, 333. Plaintiffs assert that the Manufacturer Defendants "disseminated much of their false, misleading, imbalanced, and unsupported statements through unregulated and unbranded marketing materials . . . that generally promoted opioid use . . . . Through these unbranded materials, Defendants presented information and instructions concerning opioids generally that were false and misleading." *Id*. ¶ 120.

6.    As to the Distributor Defendants, Plaintiffs allege that distributors "sold prescription opioids, including hydrocodone and/or oxycodone, to retailers in Plaintiffs' Community and/or to retailers from which Defendants knew prescription opioids were likely to be diverted to Plaintiff's Community." *Id*. ¶ 274. Plaintiffs further contend that Distributor Defendants "failed to report 'suspicious orders' originating from Plaintiffs' Community, or which the Distributor Defendants knew were likely to be diverted to Plaintiffs' Community." *Id*. ¶ 277. They further allege Distributor Defendants "unlawfully filled suspicious orders of unusual size, orders

that deviated substantially from a normal pattern and/or orders of unusual frequency in Plaintiffs' Community . . . ." *Id.* ¶ 279.

7. With regard to the Sales Representative Defendants, Plaintiffs allege that they "knowingly and negligently provided false and/or misleading information to prescribers within Ohio, including Noble County . . . , concerning the risk of addiction, abuse and diversion of OxyContin and its relative safety." *Id.* ¶ 327. Sales Representative Defendants allegedly downplayed OxyContin's "serious risks and adverse outcomes," overstated OxyContin's "superiority compared with other treatments," and "mischaracteriz[ed] the difficulty of withdrawal from OxyContin." *Id.* ¶ 331. By utilizing "Purdue and the Manufacturer Defendant's deceptive marketing" materials to "s[ell] opioids for Purdue in Ohio," Sales Representative Defendants allegedly "caused the flooding of communities across Ohio, including Noble County, with highly dangerous and addictive opioids . . . ." *Id.* ¶ 329, 334.

8. Plaintiffs also argue that Physician Defendants made "consistent, repeated, deceptive representations that they kept records as required by law and were prescribing opioids for legitimate medical purposes" which "did in fact deceive Plaintiff and its residents, resulting in widespread addiction that otherwise would not have occurred." *Id.* ¶ 347. Plaintiff also contends that Physician Defendants "engag[ed] in unlawful, nonmedical dissemination of opioids to addicts for the sole purpose of profit." *Id.* ¶ 350.

9. Based on these allegations, Plaintiffs claim a litany of injuries to themselves and their residents stemming from the alleged abuse of addictive

opioids by residents in Plaintiff's county and cities. These include alleged damages in the form of expenses incurred in providing health, social, and law enforcement services related to opioid addiction and death, as well as economic, physical, and mental injuries to their citizens.

## II.    This Action is Removable Under CAFA.

10.    Plaintiffs' lawsuit is removable under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) and 1453(b). That is because: (i) litigation of this case in federal court promotes CAFA's overall purpose; (ii) the lawsuit essentially is a class action suit; and (iii) each of CAFA's statutory requirements are satisfied. Jurisdiction under CAFA is measured at the time of removal. 28 U.S.C. § 1332(d); *Harnden* v. *Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007).

### A.    This is an Interstate Case of National Importance.

11.    First, this lawsuit is precisely the type of case that Congress intended to be litigated in federal court when it enacted CAFA. Congress's overall purpose in enacting CAFA was "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34; *see also Dart Cherokee Basin Operating Co.* v. *Owens*, 135 S. Ct. 547, 554 (2014) ("CAFA's primary objective is to ensur[e] Federal court consideration of interstate cases of national importance." (citations and quotations omitted)); *Roberts* v. *Mars Petcare US, Inc.*, 874 F.3d 953, 956 (6th Cir. 2017).

12.    This case is one of hundreds of cases filed across the country in which government entities have sued opioid prescription manufacturers, distributors, and

retail pharmacies, and others for harms arising from the abuse of these drugs. The Opiate MDL alone has more than 1,600 cases that have become part of a national narrative involving an opioid "crisis" and epidemic purportedly besieging almost every county across Ohio and the rest of the country. Plaintiffs have repeated this narrative, and in fact, have closely scripted their Complaint from complaints in cases that already are being litigated in the Opiate MDL. For example, Plaintiffs assert that their claims touch upon issues of national importance, as well as duties under federal law. *See, e.g.*, Complaint ¶¶ 14-30 (citing reports from, among other sources, the Food and Drug Administration about how "[o]pioid addiction and overdoses have reached epidemic levels over the past decade," and characterizing the issue "as a 'public health crisis' that has a 'profound impact on individuals, families and communities across our country.'"); *see also id.* ¶¶ 259-320 (alleging Distributor Defendants have intentionally failed to stop the misuse of opioids "in violation of state and federal laws and regulations"); *id.* ¶¶ 90, 117, 263, 282, 284, 286, 289, 349, 361, 374, 375, 386, 393, 403, 408, 409, 410, 411, 412.

13.    As Plaintiffs aver, the issues in this case implicate factual and legal issues that span well beyond State lines, and as a result, should be litigated in federal court along with the other lawsuits in the Opiate MDL for a more efficient proceeding. Indeed, in denying remand in another opioid case, one court observed the following:

> Here, where the opioid epidemic is pervasive and egregious, there is at least a possibility of prejudice to the defendants at the hands of a jury drawn exclusively from the very county that is the plaintiff in this suit. A federal jury casts a wider net and is drawn from a division that

comprises several counties. All may have an opioid problem, but not one that is specific to the plaintiff county.

*City of Huntington* v. *AmerisourceBergen Drug Corp., et al.*, 3:17-01362, 2017 WL 3317300, at *2 (S.D. W. Va. Aug. 3, 2017).

14.     Plaintiffs, like the other Plaintiffs in the Opiate MDL, have alleged that the Distributor Defendants failed to make reports to the Drug Enforcement Administration ("DEA"). Accordingly, litigation of these cases requires coordination with the DEA. The Honorable Judge Dan Aaron Polster of the United States District Court for the Northern District of Ohio has established protocols for the DEA to submit confidential and sensitive data from its internal databases for use in the litigation.[2]

15.     In short, jurisdiction in this matter is consistent with and promotes the purpose of CAFA.

**B.     This Case Essentially Is a Class Action.**

16.     Second, CAFA applies here because this case essentially is a class action. While Plaintiffs have not alleged a putative class action on the face of their Complaint, and have taken pains to contend that "[t]his action is non-removable," Complaint ¶ 39, in reality, this lawsuit is a "class action in all but name," *W. Va. Ex rel. McGraw* v. *Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010). *See also Freeman* v. *Blue Ridge Paper Prod., Inc.*, 551 F.3d 405, 407-08 (6th Cir. 2008) ("CAFA was clearly designed to prevent plaintiffs from artificially structuring their

---

[2] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

suits to avoid federal jurisdiction."); *Mason* v. *Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383 (6th Cir. 2016) (noting that the "guesswork here begins with even defining the putative class, since the plaintiffs neglected to define it in their putative class-action complaint" and looking to the complaint to determine jurisdiction under CAFA).

17. CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. 1332(d)(2); *see also Gerboc* v. *ContextLogic, Inc.*, 867 F.3d 675, 678 (6th Cir. 2017) (holding that jurisdiction exists under CAFA "because the parties are minimally diverse . . . the putative class has over a hundred members, and the amount in controversy exceeds five million dollars."). CAFA "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *W. Va. ex rel. McGraw*, 705 F. Supp. 2d at 452 (holding defendant properly removed action brought by the State of West Virginia against Comcast under CAFA because subscribers were the real parties in interest).

18. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332 (d)(1)(B); *see also Metz* v. *Unizan Bank*, 649 F.

3d 492, 500 (6th Cir. 2011). Consistent with Congress's overall objective in favoring federal diversity jurisdiction over class actions with interstate ramifications, "the definition of 'class action' is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labelled 'class actions' . . . . Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34. This is true even if an action does not seek class certification. *See Metz*, 649 F.3d at 500 ("Congress did not base CAFA jurisdiction on a civil action being 'certified' as a class action . . . ."). Courts should construe complaints generously in favor of jurisdiction and should not employ any presumption against removability. *See Dart Cherokee*, 135 S. Ct. at 550 ("[N]o antiremoval presumption attends cases invoking CAFA, as statute Congress enacted to facilitate adjudication of certain class actions in federal court.").

19.    Here, the Commissioners of Noble County purport to act solely on behalf of a political subdivision of Ohio, but in reality are acting as representatives for a class of residents who were allegedly harmed, either directly or indirectly, by Defendants' purported misbranding of opioid drugs or other misconduct. Plaintiffs' CSPA claim is a prime example of the Commissioners' representative status. Under R.C. §1345.01, "consumer" is defined to mean "a person who engages in a consumer transaction with a supplier," and person is defined to include both individuals and governmental entities. Plaintiffs' CSPA claim arises from both Noble County's transactions with Defendants and those of its residents. *See, e.g.*, Complaint ¶ 343

(Defendants' misrepresentations "had the tendency to influence the consumer choices of Plaintiff and its residents."); *id.* ¶ 345 ("When considered from the perspective of the reasonable consumer, these acts or practices were likely to mislead Ohio consumers in Noble County.") The CSPA specifically provides that consumers such as the Noble County Commissioners and the residents of Noble County may seek redress for unfair practices by means of a class action. R.C. §1345.09(B).

20.     Also, Plaintiffs emphasize that Defendants have inflicted both economic and non-economic injuries on their residents. *See, e.g.*, Complaint ¶ 132 ("Defendants created a body of false . . . literature about opioids that . . . was likely to shape the perceptions of prescribers, patients, and payors."); *id.* ¶ 327 (alleging that Sales Representative Defendants knew that opioids were "unreasonably dangerous and highly addictive . . . yet knowingly . . . provided false and/or misleading information to prescribers within Ohio, including Noble county . . . ."); *id.* ¶ 342 ("Distributor Defendants . . . knew to be facilitating the diversion and over-prescribing of their products, while simultaneously marketing opioids to these doctors by disseminating patient and prescriber education materials . . . Defendants knew would reach these same prescribers . . . ."); *id.* ¶ 346 (arguing that Defendants "did in fact deceive Plaintiff and its residents, causing them to both prescribe and consume opioids . . . ."); *id.* ¶ 353 ("Defendants' acts . . . have proximately caused and continue to cause an ascertainable loss of money and property to Plaintiff."); *id.* ¶ 391 ("Defendants . . . have created . . . a public nuisance by unreasonably

interfering with a right common to the general public that worked to hurt, inconvenience, or damage . . . the enjoyment of life or property."); *id.* ¶ 363 ("Plaintiffs and their residents suffered actual pecuniary damage directly caused by Defendants' deceptive behavior resulting in increased expenditures on public healthcare services, law enforcement, the justice system, child and family services as well as lost productivity and lost tax revenue."); *id.* ¶ 371 ("Noble County has suffered injuries in paying for opioids, and the direct costs resulting from opioid use as a result of Defendants' unlawful conduct . . . .").

21.     Plaintiffs' alleged injuries derive from their residents' injuries and cannot be separated from the injuries that they allege their residents have incurred. Plaintiffs seek to recover costs in providing law enforcement, medical, and social services for opioid addiction, emergencies, and overdose deaths, all of which stem from their residents' opioid abuse and addiction.

22.     Plaintiffs' Complaint satisfies CAFA's 100-member requirement because the putative class consists of thousands of residents and at least hundreds injured. *See* 28 U.S.C. § 1332(d)(5)(B). In determining whether this requirement is met, courts in the United States District Court for the Southern District of Ohio have considered the number of people who may have been potentially affected by the defendant's alleged misconduct, rather than the number of people who have been actually affected by such conduct. *See, e.g., Gascho* v. *Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 688 (S.D. Ohio 2012) ("[T]he Complaint alleges that Defendant operates fitness clubs throughout Ohio . . . . Based on this allegation

regarding the extent and nature of Defendant's business, one can reasonably assume that the class consists of more than 100 persons.").

23.     Here, Plaintiffs allege that a total of 4,050 people died from overdoses in Ohio in 2016 alone, and that emergency room visits in 2015 from residents due to opioid misuse exceeded 350 people per 100,000 in Ohio. *See* Complaint ¶¶ 25-31. In Noble County specifically, Plaintiffs allege that between 2011 and 2015, "25.7 out of every 1,000 babies were born with . . . a condition where babies are born addicted to drugs." *Id*. ¶ 32. Elsewhere, Plaintiffs allege that Defendants' deceptive practices have caused the opioid epidemic, and in 2016, killed "[s]ixty-six percent of [the] approximately 64,000 people [who] died from drug overdoses in the United States." *Id*. ¶ 19. According to census reports, Noble County has an estimated population of 14,406 in 2017. Complaint ¶ 40. The potential number of people who have or may be affected thus well exceeds the 100 member requirement under CAFA.

## C.     CAFA's Minimal Diversity Requirements Are Met

24.     There is minimal diversity between Plaintiff and Defendants under CAFA. District courts have original jurisdiction of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA eliminates the requirement of complete diversity. Instead, CAFA requires only minimal diversity— meaning that the parties are diverse if the citizenship of the plaintiff differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A); *see also Roberts*, 874 F.3d at 955.

25. For purposes of diversity jurisdiction, a political subdivision is a citizen of the state. *See Moor* v. *Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State . . . is a citizen of the State for diversity purposes."). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

26. Applying these principles, there is minimal diversity between the parties. Plaintiff is political subdivision of Ohio, and the putative class members are also residents of Ohio. *Id*. ¶ 31. The citizenship of a corporation is determined by its State of incorporation and the State in which it maintains its principal place of business. 28 U.S.C. § 1332(b). Likewise, the citizenship of any unincorporated association, such as limited partnerships and limited liability companies, is also determined by the entity's State of incorporation and principal place of business. 28 U.S.C. § 1332(d)(10).

27. Many of the Defendants are citizens of States other than Ohio. Complaint, at 1-5. For example:

    a. Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc., are both corporations organized under the laws of Delaware and both maintain the principal places of business in Malvern, Pennsylvania. They are, accordingly, citizens of Delaware and Pennsylvania.

    b. Defendant Purdue Pharma, L.P. is a limited partnership

organized under the laws of Delaware and maintains its principal place of business in Stamford, Connecticut. It is, accordingly, a citizen of Delaware and Connecticut.

c.     Defendant Teva Pharmaceuticals USA, Inc. is a corporation organized under the laws of Delaware with its principal place of business in North Wales, Pennsylvania. It is, accordingly, a citizen of Delaware and Pennsylvania.

d.     Defendant Cephalon, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Frazer, Pennsylvania. It is, accordingly, a citizen of Delaware and Pennsylvania.

e.     Defendant Johnson & Johnson is a corporation organized under the laws of New Jersey with its principal place of business in New Brunswick, New Jersey. It is, accordingly, a citizen of New Jersey.

f.     Defendant Janssen Pharmaceuticals, Inc. is a corporation organized under the laws of Pennsylvania with its principal place of business in Titusville, New Jersey. It is, accordingly, a citizen of Pennsylvania and New Jersey.

g.     Defendant Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc., N/K/A Janssen Pharmaceuticals, Inc. are corporations organized under the laws of Pennsylvania

and both maintain a principal place of business in Titusville, New Jersey. Accordingly, both are citizens of Pennsylvania and New Jersey.

h.    Defendant Watson Laboratories, Inc. is a corporation organized under the laws of New Jersey with its principal place of business in Parsippany, New Jersey. Accordingly, it is a citizen of New Jersey.

i.    Defendant Actavis LLC is a limited liability company organized under the laws of Delaware and its principal place of business is in Parsippany, New Jersey. Accordingly, it is a citizen of New Jersey and Delaware.

j.    Defendant Actavis Pharma, Inc., f/k/a Watson Pharma, Inc., is a Delaware corporation with its principal place of business in New Jersey. Accordingly, it is a citizen of New Jersey and Delaware.

k.    Mylan Bertek Pharmaceuticals Inc. is a corporation organized under the laws of Texas with its principal place of business in Sugar Land, Texas. Accordingly, it is a citizen of Texas.

l.    Walgreen Co. is a corporation organized under the laws of Illinois with its principal place of business in Deerfield, Illinois. Accordingly, it is a citizen of Illinois.

m.    McKesson Corporation is a corporation organized under the laws of Delaware with its principal place of business in San

Francisco, California. Accordingly, it is a citizen of both California and Delaware.

n.    CVS Indiana, L.L.C. is a domestic limited liability company organized under the laws of Indiana which maintains its principal place of business in Indiana. Accordingly, it is a citizen of Indiana.

o.    AmerisourceBergen Drug Corporation is a corporation organized under the laws of Delaware with its principal place of business in Chesterbrook, Pennsylvania. Accordingly, it is a citizen of both Delaware and Pennsylvania.

p.    Wal-Mart Stores East, LP, is a limited partnership organized under the laws of Delaware and maintains its principal place of business in Bentonville, Arkansas. Accordingly, it is a citizen of Delaware and Arkansas.

28.    Because there is diversity of citizenship between at least one plaintiff and at least one defendant, this action meets the minimal diversity requirement under Section 1332(d)(2)(A).

**D.    The Amount in Controversy Exceeds the Jurisdictional Limit**

29.    The amount in controversy exceeds CAFA's jurisdictional threshold. Although Plaintiffs allege no specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554 "[T]he Court

must decide whether, under the particular circumstances of th[e] case," there exists "sufficient information from which Defendants could 'ascertain' that the amount in controversy in this case more likely than not exceeds $5,000,000." *Curry* v. *Applebee's Intern., Inc.*, 2009 WL 4975274 (S.D. Ohio, Nov. 17, 2009). And, in making such determination, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

30. Here, Plaintiffs allege a panoply of injuries resulting from opioid abuse and addiction. Plaintiffs allege that opioid abuse has a substantial portion of their fourteen thousand residents at least since 2006, but potentially as far back as the late 1990s. Complaint ¶¶ 11, 16, 17-32. Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $5 million.[3]

## III. COMPLIANCE WITH PROCEDURAL REQUIREMENTS

31. CVS has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446.

32. CVS is filing this Notice of Removal pursuant to 28 U.S.C. § 1441(a) in the United States District Court for the Southern District of Ohio, Eastern Division, because the state court in which the action was commenced, the Noble County Court of Common Pleas, Caldwell, Ohio, is within this federal judicial district and

---

[3] The amount in controversy represents only what Plaintiffs request at this stage of the proceeding. This is not an admission that Plaintiffs are entitled to recover this amount. *See Cowit* v. *CitiMortgatge, Inc.*, 2013 WL 142893, at *6 (S.D. Ohio, Jan. 11, 2013) (rejecting plaintiff's argument that the defendant's calculations of the amount in controversy are too "speculative" because courts "routinely rely upon such basic multiplication to determine whether the aggregate claims of a putative class likely exceed CAFA's threshold" (citing *Hartis* v. *Chi. Title Ins. Co.*, 694 F.3d 935, 945 (8th Cir. 2012))); *see also Hartis*, 694 F.3d at 945 ("The removing party need not confess liability in order to show that the controversy exceeds the threshold." (internal citations and quotes omitted)).

this division. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

33.     Plaintiffs served the Summons and Complaint on CVS on or after October 9, 2018. CVS is removing the case within 30 days of that date; therefore this removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

34.     In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, orders, and other documents then on file in the State Court," are attached as **Exhibit 2**.  The State Court filings include Orders, Consent Agreements, and Stipulations granting extensions to certain defendants to respond to the Complaint, which are attached as **Exhibit 3**.[4]

35.     In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, CVS will "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Noble County Court of Common Pleas. A true and correct copy of the Notice to Plaintiff and Notice to the State Court of Filing of Notice of Removal will be filed as separate documents.

36.     For the purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1446(b), all defendants who have been properly joined and served must consent to removal. Under CAFA, however, "[a] class action may be removed . . . by any defendant *without* the consent of all defendants." 28 U.S.C. § 1453(b) (emphasis added).

---

[4] These extensions remain in full effect upon removal. See 28 U.S.C. §1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.")

37.     Nevertheless, the following Defendants have consented to removal: AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Walgreen Co.; and McKesson Corporation. *See Ruff* v. *Bakery, Confectionery, Tobbacco Workers & Grain Millers & Industry Intern.*, 2014 WL 7642455 (S.D. Ohio Oct. 14, 2014) ("[I]n the Sixth Circuit, an attorney may sign the Notice of Removal and certify that the remaining defendants consented to the removal." (citing *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201-02 (6th Cir. 2004))); *see also infra* pp. 21-22 (listing defendants consenting to removal).[5]

38.     Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of any Defendant's right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, Defendants respectfully request the opportunity to submit briefing, argument, and additional evidence as necessary to support removal of this case.

---

[5] By consenting to removal, these Defendants do not concede that they are proper parties to this action.

Dated: November 6, 2018

Respectfully Submitted

/s/ *Gregory J. Phillips*
Gregory J. Phillips (0077601)
Justin L. Monday (0088205)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
(216) 363-4472
(216) 363-4588 (fax)
gphillips@beneschlaw.com
jmonday@beneschlaw.com


Conor B. O'Croinin*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202–1031
(410) 949–1160
cocroinin@zuckerman.com

Eric R. Delinsky*
Alexandra W. Miller*
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036–5807
(202) 778–1800
edelinsky@zuckerman.com
smiller@zuckerman.com


* denotes national counsel who will
seek *pro hac vice* admission

*(Counsel for CVS Indiana L.L.C.)*

Consent to removal on behalf of Defendant CARDINAL HEALTH, INC.:

/s/ James B. Hadden
James B. Hadden (0059315)
Joseph F. Murray (0063373)
Brian K. Murphy (0070654)
MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
hadden@mmmb.com
murray@mmmb.com
murphy@mmmb.com

*Counsel for Cardinal Health, Inc.*

Consent to removal on behalf of Defendant AMERISOURCEBERGEN DRUG CORPORATION:

/s/ Erin E. Rhinehart
Erin E. Rhinehart (0078298)
Christopher C. Hollon (0086480)
FARUKI IRELAND COX
  RHINEHART & DUSING PLL
110 North Main Street, Suite 1600
Dayton, OH 45402
Telephone: (937) 227-3700
Telecopier: (937) 227-3717
Email: erhinehart@ficlaw.com
        chollon@ficlaw.com

*Counsel for AmerisourceBergen Drug Corporation*

Consent to removal on behalf of Defendant WALGREEN CO.:

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreen Co.*

Consent to removal on behalf of Defendants TEVA PHARMACEUTICALS USA, INC., CEPHALON, INC., WATSON LABORATORIES, INC., ACTAVIS LLC, and ACTAVIS PHARMA, INC. F/K/A WATSON PHARMA, INC.:

/s/ Wendy West Feinstein
Wendy West Feinstein (0064973)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219-6401
(412) 560-7455
wendy.feinstein@morganlewis.com

-AND-

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
steven.reed@morganlewis.com

* *denotes national counsel who will seek pro hac vice admission*

| | |
|---|---|
| Consent to removal on behalf of Defendant MCKESSON CORPORATION:<br><br>/s/ Vincent I. Holzhall<br>Vincent I. Holzhall (0074901)<br>Brian J. Laliberte (0071125)<br>STEPTOE & JOHNSON PLLC<br>41 South High Street, Suite 2200<br>Columbus, Ohio 43215<br>(614) 221-5100 phone<br>(614) 221-0952 fax<br>vince.holzhall@steptoejohnson.com<br>brian.laliberte@steptoejohnson.com<br><br>*Counsel for Defendant McKesson Corporation* | Consent to removal on behalf of Defendant WAL-MART STORES EAST, LP:<br><br>/s/ Kristin S.M. Morrison<br>Kristin S.M. Morrison<br>Ohio State Bar No. 0085004<br>JONES DAY<br>901 Lakeside Avenue<br>Cleveland, OH 44114-1190<br>Telephone: +1.216.586.7375<br>Facsimile: +1.216.579.0212<br>kmorrison@jonesday.com<br><br>-AND-<br><br>Christopher Lovrien*<br>Sarah G. Conway*<br>JONES DAY<br>555 South Flower Street<br>Fiftieth Floor<br>Los Angeles, CA 90071-2452<br>Telephone: +1.213.243.2567<br>Facsimile: +1.213.243.2539<br>cjlovrien@jonesday.com<br>sgconway@jonesday.com<br><br>* denotes national counsel who will seek pro hac vice admission.<br><br>*Counsel for Defendant*<br>*WAL-MART STORES EAST, LP* |

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Notice of Removal was served on the following on November 6, 2018 via First Class U.S. Mail:

| | |
|---|---|
| Ethan Vessels<br>210 Courthouse<br>Caldwell, OH 43724<br>-and-<br>Joseph Cappelli<br>Marc J. Bern<br>Carmen De Gisi<br>Marc J. Bern & Partners LLP<br>60 E. 42nd Street, Suite 950<br>New York, NY 10165<br><br>Attorneys for Plaintiff<br>Noble County Ohio | Cardinal Health Inc.<br>R/A CT Corporations System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 |
| Kroger Limited Partnership II<br>Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215 | Miami-Luken, Inc<br>William Powers<br>265 Pioneer Blvd<br>Springboro, OH 45066 |
| Purdue Pharma L.P.<br>R/A The Prentice-Hall Corporation System,<br>Inc.<br>251 Little Falls Drive<br>Wilmington, DE 19808 | The Purdue Frederick Company<br>R/A The Prentice-Hall Corporation System,<br>Inc.<br>251 Little Falls Drive<br>Wilmington, DE 19808 |
| Purdue Pharma, Inc.<br>R/A Corporation Service Company<br>80 State Street<br>Albany, NY 12207 | Teva Pharmaceuticals USA, Inc.<br>Corporate Creations Network, Inc.<br>119 East Court Street<br>Cincinnati, OH 45202 |
| Wal-Mart Stores East, LP<br>CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | Cephalon, Inc.<br>R/A Corporate Creations Network, Inc.<br>3411 Silverside Road<br>Tatnall Building, Suite104<br>Wilmington, DE 19810 |

| | |
|---|---|
| Justin E. Rice<br>1 Johnson & Johnson Plaza<br>New Brunswick, NJ 08933<br>Attorney for Defendant Johnson & Johnson | Justin E. Rice<br>4400 E Commons Way, Suite 125<br>Columbus, OH 43219<br>Attorney for Defendant<br>Janssen Pharmaceuticals, Inc. |
| Justin E Rice<br>1125 Bear Harbor Road<br>Titusville, NJ 08560<br>Attorney for Defendant<br>Ortho-McNeil-Janssen Pharmaceuticals, Inc. | Justin E. Rice<br>1125 Bear Harbor Road<br>Titusville, NJ 08560<br>Attorney for Defendant<br>Janssen Pharmaceutics, Inc.<br>N/K/A Janssen Pharmaceuticals, Inc. |
| Carole Rendon<br>1209 Orange St<br>Wilmington, De 19801<br>Attorney for Defendant<br>Endo Health Solutions, Inc. | Endo Pharmaceuticals, Inc.<br>CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 |
| Allergan PLC<br>F/K/A Actavis PLC<br>5 Giralda Farms<br>Madison, NJ 07940 | Actavis Pharma Inc<br>F/K/A Watson Pharmaceuticals, Inc.<br>Corporate Creations Network, Inc.<br>119 E Court Street<br>Cincinnati, OH 45202 |
| Watson Laboratories Inc.<br>119 E Court St<br>Cincinnati, OH 45202 | Allergan Finance LLC<br>50 W Broad St, Suite 1330<br>Columbus, OH 43215 |
| Kevin Murch<br>50 W Broad St, Suite 1330<br>Columbus, OH 43215<br>Attorney for Defendant Mylan Bertek<br>Pharmaceuticals, Inc. | Allergan Finance LLC<br>R/A The Corporation Trust Company of<br>Nevada<br>701 S Carson Street, Suite 200<br>Carson City, NV 89701 |
| Brandon Worley<br>4462 Rock Ridge Ln<br>Akron, OH 44333 | Rite Aid Of Ohio, Inc.<br>CT Corporation<br>1300 E 9th St<br>Cleveland, OH 44114 |
| Erin Rhinehart<br>1300 Morris Drive<br>Chesterbrook, Pa 19087<br>Attorney for Defendant<br>Amerisourcebergen Drug Corporation | Vincent I. Holzhall<br>50 W Broad St, Suite 1330<br>Columbus, OH 43215<br>Attorney for Defendant<br>McKesson Corporation |

| Walgreen Co. | Actavis LLC |
| The Prentice-Hall Corp. System, Inc. | R/A Corporate Creations Network, Inc. |
| 50 W Broad St Suite 1330 | 3411 Silverside Road |
| Columbus, OH 43215 | Tatnall Building, Suite 104 |
| | Wilmington, DE 19810 |

*/s/ Gregory J. Phillips*
*One of the Attorneys for Defendant*
*CVS Indiana L.L.C.*